TAYLOR ET AL. *v.* CANADAY, RECEIVER.

[No. 18,704.   Filed June 6, 1900.   Rehearing denied Jan. 2, 1901.]

RECEIVERS.—*Authority to Sue.*—*Complaint.*—In an action by a receiver to enjoin the collection of certain promissory notes, the complaint alleged that plaintiff was appointed receiver in the court where the suit was brought, in an action within the court's jurisdiction, and that in the order of his appointment was commanded to reduce to his possession all the property, rights, credits, and choses in action, and as such receiver to prosecute in his own name all actions necessary in the discharge of his duties.   *Held*, that the complaint exhibited sufficient authority in the receiver to bring the suit.   *p. 674.*

TRIAL.—*Special Finding.*—A special finding, " that the said bank was insolvent, and had done and committed acts of insolvency," is not bad, as stating a conclusion of law.   *p. 675.*

APPEAL.—*Conclusions of Law.*—*Joint Exception.*—A joint exception to more than one conclusion of law is not available on appeal if any one of the conclusions is correct.   *pp. 676, 677.*

SAME.—*Bill of Exceptions.*—*Time Given for Filing Beyond Term.*— Exceptions to the ruling of the trial court, to be available on appeal, should have been reduced to writing and filed within the limits of that term, unless the time for filing was extended beyond that term by special leave of court, which fact must affirmatively appear from the record.   *p. 677.*

SAME.—*Terms of Circuit Court.*—*Judicial Notice.*—The Supreme Court takes judicial notice of the terms of circuit courts.   *p. 678.*

SAME.—*Bill of Exceptions.*—*When Not Filed Within Time Granted by Court.*—Where leave was granted by the court to file a bill of exceptions within ninety days and beyond the term, a bill is no part of the record unless filed within the time granted.   *p. 678.*

From the Randolph Circuit Court.   *Affirmed.*

*Theo. Shockney, John Shockney, J. S. Engle, J. J. Cheney, J. W. Macy, J. P. Goodrich, W. G. Parry* and *E. L. Watson,* for appellants.

*W. A. Thompson,* for appellee.

HADLEY, J.—This action is to enjoin the collection of certain promissory notes assigned by the Citizens Bank of Union City, to appellant Taylor, treasurer of Union City,

in alleged violation of §2934 Burns 1894. Trial, finding and judgment for the plaintiff. Separate assignments of error call in question the sufficiency of the complaint, the correctness of the conclusions of law, and the action of the court in overruling appellant's several motions for *venire de novo* and for a new trial. .

The special finding discloses the following facts: The Citizens Bank of Union City was legally organized March 27, 1893, under the provisions of an act of the General Assembly approved February 7, 1873 (Acts 1873, p. 21), as a bank of discount and deposit, and did business as a bank of discount and deposit from the date of its organization to the 6th day of May, 1896, when its doors were closed, and the appellee was thereafter duly appointed and qualified as receiver and took charge of its assets for administration. On January 2, 1895, appellant Taylor was by the city council appointed treasurer of Union City to succeed Rosser, resigned, and, in settlement with Rosser, Taylor accepted a check drawn upon the Citizens Bank of Union City for the full amount due the city from the retiring treasurer. This check Taylor deposited with the Citizens Bank and opened with the bank a general account in the name of P. A. Taylor, treasurer, and, from time to time up to and including May 1, 1896, deposited with the bank and had placed to his said account all the money that came to his hands as treasurer of the city, amounting in all to $41,610.57, and against which deposits he from time to time during all of said period drew checks in discharge of the liabilities of the city, and which were paid upon presentation, amounting in all to $32,184.95. The officers and directors of the bank were sureties upon Taylor's official bond, and had knowledge that the money Taylor so deposited with the bank was not his individual money, but money belonging to the city of Union City. All the money so deposited by Taylor was intended by him and received by the bank as general deposits subject to check, and was

mingled by the bank with its own funds and with the moneys of other general depositors and used by the bank as its own money. Taylor at no time loaned any part of the moneys so deposited by him to the bank, or other party. On May 2, 1896, there was owing Taylor from the bank a balance of $8,416.36, which he was entitled to draw, and on that day Taylor drew and presented his check on the bank for the full amount of the city's balance; the bank paid no money on the check, but, in lieu thereof, Cadwallader, as president, and on behalf of the bank, turned over and assigned to Taylor promissory notes and bills receivable, after the same had been indorsed on behalf of the bank by Edger, cashier, amounting in the aggregate to $8,426.18, which notes were assigned by the bank and accepted by Taylor in full settlement of said balance due himself and the city, and to secure and make Taylor and the city safe on account of said deposits and on account of the indebtedness of the bank to Taylor as a depositor.

Taylor submitted said notes to one McMahan, who was at the time a member of the city council and chairman of the finance committee, and also a director of the bank, for examination, and afterwards, on May 4th, Taylor returned all of the notes to the bank but one, and received from the bank other notes of the bank indorsed as in the first instance in lieu thereof sufficient to cover said balance less $1,000 cash then paid on account of said balance. At the time of this last transaction it was agreed between the bank by Cadwallader, president, and Taylor that Taylor should continue to draw his checks upon the bank for the current liabilities of the city and that such checks should be paid, and as fast as the checks thus paid should equal a note or notes so assigned Taylor should return such note or notes to the bank. The indorsement and transfer of said notes and bills by said bank to Taylor was accepted by Taylor and made by the bank for the purpose of giving Taylor, as treas-

urer of Union City, a preference over the other creditors of
the bank. Before any of said notes had been assigned to
Taylor said Citizens Bank was insolvent and had committed
acts of insolvency, which insolvency and acts of insolvency
were well known to the officers of said bank before the trans-
fer of said notes, and before said transfer Taylor had good
reason to believe and did believe said bank was insolvent.

It is insisted that the complaint does not sufficiently ex-
hibit authority in the receiver to bring this suit. It is al-
leged in the complaint that appellee was duly and legally
appointed by the Randolph Circuit Court receiver of the
Citizens Bank, in an action within the court's jurisdiction,
and in the order of his appointment said receiver was com-
manded to reduce to his possession all the property, rights,
credits, and choses in action of every description, and as
such receiver "to bring, maintain, and prosecute, in his own
individual name any and all actions necessary in the
discharge of his duties as such receiver, whenever in the
judgment of said receiver it might be necessary to bring
and prosecute any such suit, in the proper discharge of his
duties." This action is also brought by the receiver in the
court of his appointment.

While it is essential to the sufficiency of the complaint
that it appear by clear and express averment that the re-
ceiver was authorized by the court to bring the action, we
think the averments before us are sufficient. *Hatfield* v.
*Cummings,* 152 Ind. 280; *Davis* v. *Talbut,* 128 Ind. 222;
High on Receivers, §201.

It is not necessary that the complaint shall show that the
receiver had specific authority from the court to bring this
particular action; it is good if it is shown that in the order
of appointment authority to sue was sufficiently broad to
authorize the receiver to institute and prosecute such suits
as become necessary and proper for the collection of the
assets and for obtaining possession of the property over
which he has charge. The complaint in this respect is
sufficient. Beach on Receivers, §651.

It is also urged that the complaint is insufficient to state a cause of action against either of the appellants. The complaint avers substantially the same facts stated in the special finding, and we deem it sufficient.

It is also contended by both appellants that the special finding is bad because it states conclusions and not ultimate facts, the chief complaint being made of finding thirty-five, wherein it is stated "that the said Citizens Bank was insolvent and had done and committed acts of insolvency" before its assignment of the notes to appellant Taylor. It is affirmed that "nowhere in the special finding does the court assert any fact upon which the court could be warranted in the conclusion that the bank was insolvent" and again, "What act of said bank, as shown by the special finding of facts, * * * discloses that the bank ever committed an act of insolvency?"

The office of a special finding is not to state the evidentiary facts, that is, such facts as *prove* the existence of the ultimate or inferential facts. Such evidentiary and probative facts are to be considered by the court in determining the existence of the substantive ultimate facts, but their statement in a special finding is improper.

The validity of a special finding and of a special verdict is to be tested by the same rules. It is said in *Locke* v. *Merchants Nat. Bank,* 66 Ind. 353, at page 362: "It has often been decided by this court that the jury should not find the evidence, but the facts; by which is meant the inferential facts"; and it is further said in *Louisville, etc., R. Co.* v. *Miller,* 141 Ind. 533, at page 550: "An inferential fact is an inference or conclusion from the evidentiary facts; it is an inference or conclusion from evidence. This being true, such conclusions are not conclusions of law, but they are inferences or conclusions of fact. It is, therefore, not necessary to set out or return the evidence from which the jury draw or infer such facts. Such inferences or conclusions, being matters of fact purely, and as the

jury are the exclusive judges of the facts they alone can determine what are the proper and legitimate inferences or conclusions to be drawn from the evidentiary facts."

Whether the bank was solvent or insolvent and had or had not committed acts of insolvency, at the particular time the notes were transferred, were material inquiries and ultimate facts to be deduced from the evidence as facts, not as conclusions of law.

In *Bartholomew* v. *Pierson,* 112 Ind. 430, the special finding disclosed that a married woman executed a note and mortgage "in order that her husband might obtain the money, which he did receive upon the check, and not for the purpose of obtaining any money for herself." This finding was held insufficient for failure to find "the ultimate fact, as a fact, that appellee [the wife] executed the note and mortgage as *surety for her husband* only."

The finding that a delivery of money to a child "was an advancement" is the finding of a fact, and the circumstances of the delivery are but evidence, and improperly incorporated into the finding. *Whitcomb* v. *Smith,* 123 Ind. 329. See, also, *Relender* v. *State,* 149 Ind. 283. "Executed the deed" is an ultimate fact, and the details are out of place in a special finding. *Smith* v. *James,* 131 Ind. 131. "The levy continued in force" for a specified time. "The levy" and "continued in force" are inferential facts, and not conclusions of law. *Scanlin* v. *Stewart,* 138 Ind. 574.

Further objections of like character are suggested to other findings, but, so far as they properly arise under a motion for a *venire de novo* and are material to any issue in the case, we deem them insufficient.

There are eight separate conclusions of law to the special finding. The exception reserved thereto is as follows: "To which finding and conclusions of law the defendants and each of said defendants separately and severally excepted." This exception is several as to the appellants but joint as to the conclusions. A joint exception to more than one con-

clusion must fail if any one is correct. *Saunders* v. *Montgomery,* 143 Ind. 185; *Earhart* v. *Farmers Creamery,* 148 Ind. 79; *Hatfield* v. *Cummings,* 152 Ind. 537.

There is no contention over at least one of the conclusions, and this leaves no question for consideration under the second assignment of error. Appellants separately assign numerous reasons for a new trial, calling in question the sufficiency of the evidence to support the special finding as a whole and divers specific findings.

Appellee confronts this assignment of error with the proposition that the evidence is not properly in the record. The original record and return to *certiorari* shows that the cause was put at issue and the special finding and conclusions of law were filed on the 13th day of February, the same being the thirty-sixth judicial day of the January term, 1897. On the 1st day of March, the same being the first judicial day of the March term, 1897, appellants filed separate motions and reasons for a new trial, and on the 20th day of July, the same being the one hundred twenty-second judicial day of the March term, 1897, appellants' motions for a new trial were overruled, and final judgment entered upon the special finding and conclusions of law. Exceptions were reserved to the overruling of the motions for a new trial, but no time was requested or given by the court in which to file a bill of exceptions. It further appears that October 19, 1897, what purports to be a bill of exceptions was signed by the judge and on the same day filed in the clerk's office.

The ruling upon the motions for a new trial and final judgment upon the issues were made upon the same day and recorded in the same entry on the one hundred twenty-second judicial day of the March term, 1897, and under the statute, §638 Burns 1894, §626 Horner 1897, and decisions of this court, all exceptions reserved, to be available on appeal, should have been reduced to writing and filed within the limits of that term unless the time for filing was

extended beyond that term by special leave of court, which fact must affirmatively appear from the record. *Hancher* v. *Stephenson,* 147 Ind. 498; *Minnick* v. *State,* 154 Ind. 379; Ewbank's Manual §33; Elliott's App. Proc. §804.

This court will take notice that the 19th day of October, 1897, the day upon which the bill of exceptions was filed, occurred, not within the limits of the March, but of the September term, 1897, and the record nowhere disclosing any leave of court to file such bill at a time subsequent to the March term, it must be held as forming no part of the record and as presenting no question in this appeal.

We find no available error in the record. Judgment affirmed.

Monks, J., did not participate in this decision.

## PETITION FOR REHEARING.

PER CURIAM.—Appellants in their petition for a rehearing earnestly complain of our ruling that the bill of exceptions was not in the record. The ruling was placed upon the ground that the bill was filed at a time subsequent to the adjournment of the term at which the final judgment was rendered, without special leave of court extending the time for filing beyond the term. Upon reviewing the return to the writ of *certiorari* we find that leave was granted to one of the appellants, the city of Union City, to file its bill of exceptions within ninety days. The record shows that such leave was granted July 20, 1897, and that the bill was filed October .19, 1897, which filing was not within the time granted, and the bill therefore was no part of the record. Petition overruled.