BAKER *v.* METROPOLITAN LIFE INSURANCE COMPANY.

[No. 27,858.   Filed May 4, 1943.]

*Carr & Love,* of Monticello, for appellant.

*Hammond, Buschmann, Roll & Alexander,* of Indianapolis, for appellee.

RICHMAN, C. J.—Appellant seeks to recover from appellee the rents and profits of a 463 acre farm in White County for the years 1933 to 1936 both inclusive. A demurrer for want of facts was sustained to his complaint. He stood on the ruling, suffered decree that he take nothing and appealed. The complaint occupies over 27 pages of his printed brief. The basic facts pleaded are as follows:

In 1930 he owned this farm and other interests in real estate. The farm was encumbered by first mortgage in the principal sum of $35,000 to appellee, and by

second mortgage in the principal sum of $30,000 to the Farmers State Bank of Monticello of which appellant was stockholder, director and president. Whether appellant was personally liable upon the first mortgage is not disclosed. He was so liable upon the second mortgage and in addition was indebted by unsecured promissory notes in the following sums with accrued interest thereon: $9,800 to the Farmers' State Bank, $7,000 to the State Bank of Monticello and $3,000 to William Hickman. The Farmers' State Bank became financially embarrassed and was closed. William F. Brucker and William N. Loughry were appointed its receivers April 1, 1930, by the White Circuit Court. Appellant made an oral proposal to convey the farm and interests in other real estate to the receivers. In their petition to the court for authority to consummate the arrangement they recite his offer as

". . . made on the condition and in consideration that said Receivers manage and dispose of all of said property and rights, under order of this court.

"That they as such Receivers, be reinbursed for all costs and expenses of management and disposition of said property; that all sums owing to Farmers' State Bank, Monticello, Indiana, and secured by liens on said real estate or any part thereof be first paid from the proceeds of the sale of the property encumbered by any such liens, and that the net proceeds remaining from the sale of all of the property be prorated to the remaining indebtedness owing by said Baker to said Farmers' State Bank; to any amount owing by said Baker to State Bank of Monticello, and not fully covered by collateral securities, and to any amount owing by said Baker to William Hickman."

The only part of the alleged oral proposal not incorporated in the petition was that he should receive the residue, if any, of the proceeds from sale and from rents and profits after payment of his debts.

The petition was granted and quitclaim deeds were executed to the receivers. The deed to the farm executed June 28, 1930, contains only one unusual provision, namely, "that this conveyance shall not release any lien, or liens, that the grantees, as such receivers, or the Farmers' State Bank of Monticello, Indiana, now have against the real estate above described . . . and that any such lien shall not merge in the fee; but continue for the use of the grantees or their assigns."

The complaint further alleges that pursuant to authority granted by the court on *ex parte* petition of the receivers, the farm was on December 8, 1932 sold and conveyed by the receivers to Jacob T. Miller, general agent of appellant. The consideration was assumption by him of the $35,000 first mortgage, delinquent interest thereon and taxes, the receivers reserving "the landlords share of the growing crops or one half (½) of all growing crops in the year 1932 on said real estate."

July 13, 1934, appellee filed suit against Mr. and Mrs. Miller and appellant to foreclose its mortgage and upon decree the farm was sold and, on December 3, 1936 at the end of the year for redemption, conveyed by sheriff's deed to appellee.

It is alleged that all the other property conveyed by appellant to the receivers was sold, his debts have all been paid or discharged and that the receivership was closed and the receivers discharged June 22, 1935. This action was begun January 20, 1939.

The theory of appellant's complaint is ingenious but unsound. He contends that his oral proposal, pursuant to which he conveyed the farm to the receivers, created a trust in his favor impressed upon the rents and profits thereof, that the sale made to Miller was in contravention of the trust, without or for inadequate considera-

tion and in reality a sale to appellee for whom he acted as agent, that during the time Miller held possession, namely, from December 8, 1932 to December 3, 1936, appellee through Miller converted the rents and profits to its own use and is accountable therefor to appellant. He further contends that the alleged trust created an obligation upon the receivers to comply with § 56-622, Burns' 1933, § 14755, Baldwin's 1934, requiring notice of sale to be given "all persons having, directly or remotely, an interest in the trust property, all of whom shall be made parties to said proceeding" and because he was not made a party to and had no notice or knowledge of the sale by the receivers to Miller, the sale was void. There is no charge of fraud on the part of appellee, Miller or the receivers. Liability is predicated solely upon the theory of an express trust.

Receivers are merely officers of the court and the property in their hands is in *custodia legis*. Persons who deal with them must take notice of the extent of their authority. Appellant is therefore bound by the petition, the essential terms of which we have quoted, *supra*, and the order made thereon. Nothing was exacted of the receivers beyond their usual duties except in distribution of the proceeds of sale. There is an implication that the property would not sell for a sufficient sum to pay all of appellant's debts and he therefore required, as a condition to the voluntary conveyance by him, that his named creditors, as to unsecured claims, share pro rata in the balance, if any, remaining after payment of the two mortgages. By express provision in the deed he consented to the continued existence of the lien of the second mortgage which otherwise might have been merged in the fee conveyed to the receivers. There was no provision that he be given notice of sales to be made. Subject only

to the exaction as to disposition of surplus after discharge of the mortgages, the property was to be and was received like any other assets in the receivers' hands to be held and disposed of under orders of the court. The rents and profits were not segregated from but went with the real estate. In all this we find no suggestion of an independent trust made for appellant's benefit. The arrangement was for the benefit of Hickman and the State Bank of Monticello, and perhaps made at their insistence, to accomplish the same result as involuntary bankruptcy proceedings which the receivers had been authorized to institute against appellant. Their sale to Miller was made with the approval of the court and is not now subject to collateral attack. *Hatfield* v. *Cummings, Receiver* (1899), 152 Ind. 280, 50 N. E. 817; *Cook* v. *Citizens National Bank* (1881), 73 Ind. 256. If appellant had any equities in the farm he should have set them up in the foreclosure suit. *Mutual Benefit Life Ins. Co.* v. *Bachtenkircher* (1935), 209 Ind. 106, 198 N. E. 81, 104 A. L. R. 1135; *O'Brien et al.* v. *Moffitt et al.* (1893), 133 Ind. 660, 33 N. E. 616; *Stockwell et al.* v. *State ex rel. Johnson, Auditor* (1885), 101 Ind. 1; *Masters* v. *Templeton* (1884), 92 Ind. 447.

The decree is affirmed.

NOTE.—Reported in 48 N. E. (2d) 173.